F. H. BRINKERHOFF, Respondent, v. S. G. ELLIOTT, Appellant.

Kansas City Court of Appeals, January 5, 1891.

1. **Appeals:** PAYMENT OF COSTS DOES NOT DEFEAT RIGHT TO. Where a plaintiff is beaten in a justice's court and adjudged to pay the costs and does so, such payment does not defeat his right to appeal to the circuit court, and the doctrine, that one who has received satisfaction of a judgment in his favor cannot thereafter appeal, has no application.

2. **Contracts:** PERFORMANCE : INSTRUCTION : PLEADING AND PROOF . If a party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it

by contract : and so where plaintiff's contract required him to drain certain mining lands entire it is error to instruct the jury that if he did drain the same or any part thereof, then he could recover.    Again, plaintiff in this case is precluded from proof of excuses for non-performance, since this element is entirely outside of the terms of the complaint.

3.  ——:  CONSTRUCTION.  A contract concerning the draining of certain mining lands of the defendant (and set out in the opinion ) is construed in view of the situation of the parties and the lay of the land, and it is *held* that said "mining lands" meant only the six lots worked by the other parties to the contract; and that defendant was looked to for pump royalty, and that the six other parties were only to pay for water privileges in a certain event.

*Appeal from the Dade Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED AND REMANDED.

*Mann & Talbott* and *Henry Brumback*, for appellant.

( 1 ) The court should have dismissed the appeal. The plaintiff voluntarily paid off the judgment of the justice, and thereby satisfied and extinguished it, so that there was nothing in existence from which to appeal, when he attempted some days later to take an appeal. *Houck v. Swartz*, 25 Mo. App. 20 ; *Robards v. Lamb*, 76 Mo. 192.    The deposit must be a sum equal to the "costs that have accrued, and will probably accrue in the same."    R. S. 1889, sec. 6155 ; R. S. 1879, sec. 2868 ; *Harrison v. Railroad*, 74 Mo. 364, 371 ; *Fulkerson v. Eads,* 19 Mo. App. 620 ; *Pier v. Heinrichoffen*, 52 Mo. 333 ; *Bank v. Hatch*, 78 Mo. 13, 24; *Nichols v. Larkin*, 79 Mo. 264 ; *Harrison v. Railroad*, 74 Mo. 364, point on 370, 371, 372 ; *Werries v. Railroad*, 19 Mo. App. 400 ; *Fulkerson v. Eads*, 19 Mo. App. 620 ; *White v. Railroad*, 19 Mo. App. 400. ( 2 ) The first instruction given is faulty.    It directs the jury to find for the plaintiff, if they believe he "did drain the mining lands of Elliott, or any part

thereof." The suit is based on the written contract, and that contract is "entire" and not "severable." It stipulated that Brinkerhoff shall "drain said grounds," and not "a portion of them." 2 Parson's Contracts [ 5 Ed.] 520 ; *McDermott v. Jones*, 2 Wall. 7 ; *Lowber v. Bangs*, 2 Wall. 728 ; *Earp v. Taylor*, 73 Mo. 619, and Missouri cases cited ; *Gruetzner v. Furn. Co.*, 28 Mo. App. 266, and Missouri cases cited. ( 3 ) The fourth instruction is erroneous in the same particular, that it permits plaintiff to recover if he "did drain defendant's mining land or some portion thereof." ( 4 ) The court should have given the second instruction asked by defendant. The plaintiff must perform his part of the contract, nor can he excuse his failure so to do by proof of impossibilities ( he testified, it was impossible for one pump to drain the grounds dry ). and yet demand compensation. *Harrison v. Railroad*, 74 Mo. 364 ; *White v. Railroad*, 19 Mo. App. 400 ; *Fulkerson v. Eads*, 19 Mo. App. 620 ; *The Harrlman*, 9 Wall. 161 ; *McDermott v. Jones*, 2 Wall. 1 ; *Shouse v. Neiswanger*, 18 Mo. App. 250.

*Norman Gibbs*, for respondent.

( 1 ) The court below was right in refusing to dismiss plaintiff's appeal from the justice. The cases cited by appellant in his first point are cases in which the party in whose favor the judgment was rendered, accepted payment of the judgment in his favor, and then appealed. In those cases the courts held that : " A party, who has accepted satisfaction of a judgment in his favor, cannot afterwards appeal. ( 2 ) As to the proper construction of the contract read in evidence, respondent would submit that the rules for the construction of a contract are : *First.* " If we would precisely interpret their words we must put ourselves exactly in their position, and know just what they mutually know." Bishop on Cont. [ Enlarged Ed. ] sec. 370. *Second.* " The first point is to ascertain what

the parties themselves meant and understood." 2 Parsons on Cont. [5 Ed.] p. 494. The rule most conspicuous and wide reaching of all is, that a written contract shall be so interpreted as if possible to carry out what the parties meant." Bishop on Cont. [Enlarged Ed.] sec. 380, and authorities cited. *Third.* "In all these cases the court will endeavor to give to the contract a rational and just construction." 2 Parsons on Cont. [5 Ed.] p. 501. *Fourth.* "Where anything is to be done, and no time is specified in the contract, it is then a presumption of law that the parties intended and agreed that the thing should be done in a reasonable time." "They will consider all the facts and circumstances of the case in determining this." 2 Parsons on Cont. [5 Ed.] p. 535. *Fifth.* "A custom which may be regarded as appropriate to the contract and comprehended by it, has often very great influence in the construction of its language." 2 Parsons on Con. [5 Ed.] p. 535. *Sixth.* "In a case of doubt the interpretation which the parties by their acts under the contract have practically given it will have weight, and it may be controlling." Bishop on Con. [Enlarged Ed.] sec. 412, and citations; *Chicago v. Sheldon*, 9 Wall. 50, at p. 54; *Coleman v. Grubb*, 11 Harris (Pa.) 393, at p.409; *Hamm v. San Francisco*, 17 Fed. Rep. 119, at p. 124. (3) The instructions of the court were even more favorable to appellant than he was entitled to. The miners were the mere licensees of defendant and all their work was under his rules and "subject to his inspection and approval," and certainly plaintiff should not be held responsible for any neglect of defendant's own licensees, in lowering the sleeve as they sunk the shaft. *Richmond v. Steamboat Co.*, 87 N. Y. 240, at p. 244; *Tureman, Ex'r, v. Stephens*, 83 Mo. 218, at p. 221, 223-4; *Bean v. Miller*, 69 Mo. 384.

GILL, J.—This action was brought before a justice of the peace, where the complaint was as follows:

"Plaintiff states that defendant had on the twenty-second day of July, 1887, a lot of miners mining for lead and zinc on his land near the town of Aurora in said county of Lawrence, to-wit: — and known as the mining lands of S. G. Elliott, and was superintendent of said mines and had the rules of said mines duly posted in his office, as required by the laws of the state of Missouri, and one of said rules provided that, if it may become necessary to drain the lands by a system of pumps, each miner on said lands shall pay the customary royalty, which was in addition to the royalty due him as owner of the land ; that on said twenty-second day of July, 1887, defendant by his written contract of that date executed by him and others, in consideration that plaintiff would put a pump of sufficient capacity to drain the grounds into the shaft near the west line of lots 17 and 18 for the purpose of draining the said mining lands within the first days of August, defendant agreed that plaintiff should receive a certain pump royalty therein fixed from the lead and zinc ores in his possession mined on his said mining lands ; that plaintiff on his part has complied with the terms of said contract, and defendant has partly complied and partly failed and refused to comply with the terms thereof, and now owes the plaintiff the sum of ninety-eight dollars and seventy-five cents ($98.75) as pump royalty under said rules and contract on lead and zinc mined on defendant's said mining lands, which said lead and zinc defendant has sold and delivered to various persons, the items of which fully appear by an account herewith filed, for the amount of which plaintiff asks judgment.          F. H. BRINKERHOFF,
"Plaintiff."

The contract referred to in the statement, and which was in evidence at the trial, is as follows :

"Contract for draining S. G. Elliott's mining lands, made and entered into between S. G. Elliott, F. H. Brinkerhoff and certain miners, to-wit, J. Z. and George

Taylor, M. C. Turpin, John McGill, L. D. Gardner and Frank Rhea. It is agreed that the said F. H. Brinkerhoff shall have the privilege of putting a good pump of sufficient capacity to drain the grounds into the shaft near the west line of lots 17 and 18 for the purpose of draining the mining lands of S. G. Elliott. Now if said F. H. Brinkerhoff shall put in said pump within first days of August, and drain said grounds, then we, the undersigned, agree to pay as may hereafter be specified. Now if the water and mineral royalty, as allowed on said lands shall fail to pay to said F. H. Brinkerhoff the sum of $3 for a twelve-hour run, or $5 for a twenty-four-hour run, then the said S. G. Elliott is to make up said deficiency until in all said deficiency shall amount to the whole sum of $50. After this, if there shall be a deficiency, then Taylors, Turpin and McGill, Gardner and Rhea agree to pay fifty cents a day each for water privileges, otherwise they are to have one wash place for each company free. Weekly settlements shall be made to ascertain any daily deficiency. The pump royalty shall be as follows, on different kinds of minerals : On zinc, $1 per ton ; on all lead ores, $2 per one thousand pounds, except on dry bone, which shall be only $1 per one thousand pounds, unless the mineral and water royalty shall fail to pay $3 for a twelve-hour run or $5 for a twenty-four-hour run. In case of a deficiency, said F. H. Brinkerhoff may collect $2 on dry bone, or such an increase between $1 and $2 per thousand pounds as may be necessary to make up said deficiency. Signed, Aurora, Missouri, this twenty-second day of July, 1887. S. G. ELLIOTT,

"F. H. BRIKERHOFF.

"J. Z. TAYLOR,
"GEORGE TAYLOR,
"M. C. TURPIN,
"JOHN McGILL,
"L. D. GARDNER,
"FRANK RHEA."

Pending the proceedings before the justice plaintiff, on being required to give security for costs, deposited with the constable the sum of $25. On a trial there had, judgment went in favor of defendant. The next day after the trial Brinkerhoff, the plaintiff, settled the costs, by permitting the constable to retain the necessary amount therefor out of the deposit, the remainder being paid over to the plaintiff, and the justice made an entry on his docket of costs paid by the plaintiff. However, within four days after the judgment before the justice, plaintiff filed his bond and affidavit for appeal, and the cause went thereby to the circuit court. The defendant there moved the circuit court to dismiss the appeal, for the alleged reason that prior to taking the appeal from the justice the plaintiff had paid and satisfied the judgment of the justice against him. The circuit court overruled the motion, and the trial was proceeded with in the circuit court before a jury, who found for the plaintiff for the amount claimed, and the defendant brings the case here by appeal.

I. The first point in defendant's brief relates to the matter last above suggested. It is claimed that the plaintiff, having paid the costs adjudged against him in the justice's court, was thereby shut out of the right to appeal to the circuit court, and, therefore, that defendant's motion to dismiss the appeal should have been sustained. We do not assent to this view. Nor do the cases cited sustain any such contention. The holding of those cases is simply "that a party who has accepted satisfaction of a judgment in his favor cannot afterwards appeal." *Robards v. Lamb*, 76 Mo. 192; *Cassell v. Fagin*, 11 Mo. 207; *Houck v. Swartz*, 25 Mo. App. 20. And a further case, that might have been cited, is *Waddingham v. Waddingham*, 27 Mo. App. 607. In all of these, the party appealing had judgment in the lower court for some amount, and had enforced such judgment by collecting and accepting such award, and subsequently complained of such judgment in the appellate

court, although such appellant had previously received and enjoyed the proceeds thereof. By enforcing the judgment in his favor—enjoying the fruits which accrue from it—it is said, "the same becomes satisfied, and the appellant releases any errors which may have been committed in rendering it." *State v. Lubke*, 15 Mo. App. 166. In the case we have here, the plaintiff recovered nothing before the justice, and received nothing. He was, during the course of the litigation, adjudged to pay certain costs, and did pay them ; and we know of no rule of law that would, on that account, deny him the right of appeal. There is no question but that a litigant may, during the progress of the suit, pay his costs ; and at the end of the controversy, if judgment be rendered in his favor, he will be entitled to recover of the adverse party " his costs thus laid out and expended, and have execution therefor."

II. In a review of the court's instructions, given at the instance of plaintiff, we discover substantial error. By the terms of the written contract, plaintiff Brinkerhoff obliged himself to put in "a good pump of sufficient capacity to drain the grounds" of defendant Elliott, and that "*he would drain said grounds*," in consideration whereof he, the said Brinkerhoff, was to be paid certain amounts, etc. Here is a definite and clear undertaking by the plaintiff to drain the water from Elliott's mining lands,—not that a *part* should be drained, or that all should be *partially* drained,—but the obligation assumed was, to completely drain the entire land which was the subject of the contract. However, the court instructed the jury as follows:

"1. The court instructs the jury that, if they believe from the evidence that the plaintiff put in a pump in the shaft designated in the contract introduced in evidence, that the same was of sufficient capacity to drain the mining lands of defendant Elliott, and did drain the same or *any part thereof*, then your verdict will be for plaintiff."

And by instruction, numbered 4, the court further told the jury: "That, under the contract given in evidence, the plaintiff agreed to drain the defendant's mining lands, and that unless you believe from evidence that he did drain the defendant's mining lands, or *some portion thereof*, he cannot recover."

We have italicized the objectionable words of these instructions. The clear import of the foregoing was to permit plaintiff to recover of defendant, although Brinkerhoff had not complied with his contract. He had agreed to drain a certain body of mining lands for a stipulated compensation. His engagement was to do a certain thing, and, under these instructions, he may recover, although he has not done that thing. Thus declaring the law to the jury was clearly erroneous.

The rule is "that when a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by contract." *Hall v. School District*, 24 Mo. App. 218; *Harrison v. Railroad*, 74 Mo. 371; *White v. Railroad*, 19 Mo. App. 401. This undertaking by Brinkerhoff to drain Elliott's mining lands is not, by the terms of the contract, subject to any qualification or contingency. He was, by his own agreement, absolutely bound to perform the work, and the performance thereof is a condition precedent to a right to compensation. If plaintiff desired any qualification to this agreement on his part, he should have called for, and procured, such to be entered into the body of the writing. It is no part of the duty of the court to interpolate such conditions. The parties must abide by the plain terms of their contract. It follows then that the court erred in telling the jury that the plaintiff might recover even though he had not performed his undertaking.

There is here no room for excuses for non-performance such as the alleged "neglect of the miners," or the

derangement of the machinery of the pump, etc. The plaintiff brings his suit on a specific contract, alleging full performance on his part, and claiming the full specified money compensation therein called for from the other contracting party. In addition, therefore, to the reasons already set out, plaintiff is precluded from proof of excuses for non-performance, since this element is entirely outside of the terms of the complaint or petition. *Nichols v. Larkin*, 79 Mo. 264; *Bank v. Hatch*, 78 Mo. 13; *Pier v. Heinrichoffen*, 52 Mo. 383.

III. It follows from what has been said that we must reverse this judgment and remand the cause.

Since, however, a new trial may be had, we deem it proper to give our views on some other questions regarding the construction of the written contract sued on. In view of the situation of the parties at the time this contract was entered into, and in view as well of the lay of the mining lands of Elliott, and the other circumstances conclusively shown by the evidence, we regard it as reasonably certain : *First*, that by the "mining lands of S. G. Elliott," named in the contract, is meant only the six lots worked by the miners, the two Taylors, Turpin, McGill, Gardner and Rhea; *second*, that Elliott was looked to for payment of the pump royalty. It was expected that he would, under the rules and regulations controlling his mining lands, collect this from the six individual miners signing the contract, but that as between Brinkerhoff and Elliott, the latter was to settle with Brinkerhoff for such pump royalty. The only obligation assumed by the six miners (outside of the amounts to be paid to Elliott as pump royalty) was to pay in a certain event fifty cents a day each for water privileges.

The judgment is reversed and the cause remanded. All concur.